## FACTS

### *The History of the Provision of Services from Ezenia*

7. From 2001 until the present, Ezenia sold the IWS product on a concurrent user[1] license basis to various military and intelligence agencies.

### *"Best of Breed" Evaluation*

8. In January 2006, the Office of the Army Chief Information Officer ("Army CIO"), in concert with the Defense Information Services Agency ("DISA"), announced what it described as a "Best of Breed" evaluation that was intended to reduce the number of vendors used to supply standard software solutions to the DoD.

9. In or about February or March 2006 the Army CIO conducted a "Best of Breed" evaluation which, upon information and belief was intended to acquire a "suite" of products from which Army purchasing units could choose.

10. Upon information and belief, the Best of Breed evaluation was not an acquisition vehicle or competitive procurement, but merely a process used to identify what DISA would characterize as the "best" suite of knowledge management and collaboration tools.

11. Upon information and belief, the Best of Breed evaluation did not include a solicitation or other request for proposals, or any of the attributes required by statute and regulation of a solicitation or other request for proposals.

12. Upon information and belief, the Best of Breed evaluated products using the following metrics: (1) performance parameters; (2) knowledge/collaboration capabilities; (3) technical capabilities; (4) other attributes of Army needed capabilities; and (5) cost.

---

[1] Concurrent user license basis allows for different persons to use the license simultaneously. For example, upon purchasing 100 licenses, those 100 licenses might support 500 people using the licenses at different times. However, at any one moment, only 100 users may be logged on using the 100 licenses.

13. Upon information and belief, the Best of Breed evaluation ranked the relative importance of each metric with price being the least important factor.

14. Upon information and belief, the Best of Breed did not request nor require participants, including the Government, to comply with various mandatory provisions of the Federal Acquisition Regulation ("FAR"), or other statutes and regulations, applicable to solicitations or requests for proposals.

15. The Best of Breed evaluation paperwork did not require participants to certify the cost or pricing data provided, or other price-related information, as would be required in a lawful procurement (FAR Parts 15.403-4(b) and 15.406-2).

16. The Best of Breed evaluation paperwork did not require examination of past performance, as would be required in a lawful procurement (FAR Parts 15.204(b), 15.304(c), and 15.305(2)).

17. The evaluation paperwork did not require examination of the responsibility of the various test participants, as would be required in a lawful procurement (FAR Part 15.402(a)).

18. In or about February or March 2006, the Army CIO conducted the Best of Breed evaluation at the Central Technical Support Facility at Fort Hood, in which Ezenia participated.

19. After the initial tests, upon information and belief, Ezenia was one of the three finalists, the other two being Adobe Systems ("Adobe") and Groove Technologies. After asking Ezenia to configure its product per the Army CIO's specifications, the Army CIO completed the testing without additional configuration from Ezenia.

20. Ezenia's product offered the same functionality as the Adobe product.

21. Subsequently, when Ezenia asked the Army CIO for the results of the testing, the Army CIO did not respond.

22. To date, Ezenia has not received any results from the "Best of Breed" even though Ezenia has requested this information a number of times.

23. Upon information and belief, in May 2006, the Army CIO, decided to standardize its use of collaboration software and it selected Adobe Connect[2], produced by Adobe. Upon information and belief, upon identification of the Adobe product as "Best of Breed," the Army directed all purchasing activities to cease purchase of IWS – essentially requiring a sole-source contract to Adobe for replacement products.

24. Ezenia never received notification of any procurement competition, solicitation or award, sole-source or competitive, specifically used to award a contract to replace Ezenia's product. Ezenia only learned that the Adobe product was designated as "best of breed" in August 2007.[3]

25. Upon information and belief, this DISA selection did not obviate the need for, or preclude the individual government buying activities from, conducting competitive procurements and making independent procurement decisions as to which software solution to purchase. In fact, Ezenia remains the product of choice for numerous users. For example, the Department of the Navy's Pacific Command recently selected IWS and renewed Ezenia's existing license agreement. Additionally, other purchasing units within the Army (such as European Command and Joint Special Operations Command) have continued to renew and use Ezenia's product.

26. Upon information and belief, while DISA may have in some way anointed the Adobe product, Adobe's product is not part of a mandatory government-wide procurement

---

[2]Upon information and belief, in June of 2007, DISA then awarded the Net-Centric Enterprise Services ("NCES") contract, to Carahsoft Technology Corporation ("Carahsoft"), which implemented Adobe Connect.

[3] On or about October 5, 2007, the Army attorney informed Ezenia's counsel that the Army awarded a contract in February of 2007. To date, Ezenia has not received notice of any contract award.

contract, statutory competition requirements were not repealed, and a procurement has not been conducted.

*Army Headquarters Europe Sole-Source Contract Award*

27. On September 26, 2006, Army Headquarters Europe ("Army Europe HQ"), an Army command activity, awarded Ezenia a contract for 200 IWS licenses for the period of September 28, 2006 through September 27, 2007 under Solicitation W912PE-06-T-0608.

28. Upon information and belief, the Army Europe HQ never published the statutorily required notice of intent to award a sole-source contract on the FedBizOpps website or the Commerce Business Daily ("CBD").

29. On June 7, 2007, Ms. Linda Conaway, Chief, Plans and Integration of the Office of the G3, issued a Brand Name Justification stating that Army Europe HQ was converting from IWS to Adobe Connect per the Army's directive of "approved collaboration software." Government Accountability Office Agency Record ("GAO AR") Tab 9. No further justification was given. The Brand Name Justification consists of two paragraphs and no attachments.

30. On June 27, 2007, the Army Europe HQ placed a task order for the Adobe product using a June 11, 2003 contract between the Department of the Air Force and General Dynamics. This contract predated the "Best of Breed" evaluation by four years. GAO AR Tabs 4, 10 and 11. Carahsoft is the ultimate vendor of the Adobe product. GAO AR Tab 10. Upon information and belief, the only way that the terms and conditions of the 2003 contract, as well as the product offer, could resemble the Best of Breed offering is a coincidence.

31. On August 27, 2007, Ezenia contacted Army Europe HQ regarding the upcoming expiration of the IWS licenses. That same date, Army Europe HQ informally told Ezenia via email that it would not be renewing the licenses and that official confirmation would be forthcoming.

32. On September 5, 2007 Army Europe HQ notified Ezenia, verbally and via electronic mail, that it would not be renewing its licenses of IWS, Ezenia's product. Army Europe HQ told Ezenia that the Army was pushing for consolidation on the Adobe platform and gave no further explanation, while strongly implying that "the Army" (and/or DISA) had directed that a sole-source contract be awarded for the Adobe product.

33. After receiving the September 5, 2007 email from the Army, Ezenia promptly requested in writing, via email, further explanation of the Army Europe HQ's decision. Ezenia received a brief explanation on September 6, 2007..

34. On September 14, 2007, Ezenia filed a bid protest with the GAO pursuant to 4 C.F.R. § 21.2. Upon receipt thereof, on September 17, 2007, GAO assigned an attorney and file number B-310325 to the protest. On September 21, 2007, GAO gave formal notice of the due date for the Agency Report.

35. On October 17, 2007, the Army produced the GAO AR.

***82d Airborne Sole-Source Contract Award***

36. On August 13, 2006, the Army's 82nd Airborne Division located at Ft. Bragg, North Carolina ("82d Airborne"), through the Fort Bragg Directorate of Contracting, placed an order (number W91247-06-F-0277) with Ezenia for approximately 38 IWS licenses.

37. On September 12, 2007, Ezenia contacted the 82d Airborne regarding the upcoming expiration of the IWS licenses. On September 13, 2007, the 82d Airborne notified Ezenia that it would not be renewing its IWS licenses.

38. On September 13, 2007, the same day as the receipt of the downselect notification, Ezenia requested, in writing via email, further explanation of the 82d Airborne decision. Ezenia received a brief response that the product was already in use and had been licensed.

39. Upon all information available to Ezenia at the time, no follow-on or replacement contract had been awarded. Via email on September 14, 2007, the 82d Airborne represented that it had just purchased the Adobe product which had been already deployed in theater and gave no further explanation.

40. On September 19, 2007, Ezenia filed a bid protest with the GAO pursuant to 4 C.F.R. § 21.2. The GAO assigned an attorney and file number B-310381 to the protest.

41. The Agency Record for this GAO protest was due from the Army on October 22, 2007 but the GAO postponed the due date pending resolution of an Army motion to dismiss filed on October 17, 2007.

42. Upon information and belief, the 82d Airborne never published the statutorily required sole-source intent on the FedBizOpps website or the CBD.

43. Upon information and belief, the 82d Airborne may have issued a Brand Name Justification with similar language to the Army Europe HQ justification.

44. On information and belief, the 82d Airborne has procured, or plans to procure, Adobe Connect without a competitive procurement. The 82d Airborne essentially made, or plans to make, a sole-source award to Carahsoft for Adobe Connect, without synopsizing its intent to award such a contract or other otherwise comply with the detailed requirements in FAR Part 6.3 regarding a sole-source award or brand name justification.

45. Upon information and belief, according to Carahsoft (its October 15, 2007, Notice of Intervention in the underlying GAO protest) it holds a current contract with the 82d Airborne.

***Army Command Sole-Source Contract Award***

46. Upon information and belief, on October 11, 2006, the Army through the Army Command ("ACOM"), Bagram Joint Contracting Office, placed an order for supplies under order number W91B4N-07-F-0001 for 350 licenses of IWS at $512 per license and 2 kits.

47. Prior to the anticipated expiration of October 11, 2007 for the IWS licenses, on Friday, September 28, 2007, Ezenia contacted ACOM regarding renewing those licenses. The same day, September 28, 2007, via electronic mail, ACOM notified Ezenia that it would not be renewing its approximately 175 licenses of IWS.

48. On September 28, 2007, the same day Ezenia received this notification, Ezenia requested an explanation. To the best of Ezenia's knowledge at that time, a follow on or replacement contract had not been awarded. Via email on September 28, 2007, ACOM posited that its move to the Adobe product is because one of the Army's "approved solutions" for real time collaboration which did not require a separate client and gave no further explanation. Ezenia promptly requested, in writing via email, further explanation of the Army's decision but received no further communication or explanation.

49. On October 5, 2007, Ezenia filed a bid protest with the GAO pursuant to 4 C.F.R. § 21.2. The GAO assigned an attorney and file number B-310622 to the protest.

50. The Agency Record for this GAO protest was supposed to be due from the Army on November 8, 2007, but the GAO postponed the due date pending resolution of the Army's motion to dismiss filed on October 17, 2007.

51. Upon information and belief, ACOM never published the statutorily required sole-source intent on the FedBizOpps website or the CBD.

52. Upon information and belief, ACOM may have issued a Brand Name Justification with similar language to the Army Europe HQ justification.

53. On information and belief, ACOM has procured, or plans to procure, Adobe Connect software without a competitive procurement. ACOM essentially made, or plans to make, a sole-source award to Carahsoft for the Adobe Connect software without synopsizing its

intent to award such a contract or other otherwise complying with the detailed requirements in FAR Part 6.3 regarding a sole-source award or brand name justification.

*The Army's Non-Compliance with CICA and FAR*

54. The Army failed to provide for full and open competition in making or planning to make the several awards for the Adobe product.

55. The Army's conduct did not comply or fall under any of the exceptions in FAR Part 6.302-1 – 6.302-7 or 10 U.S.C. § 2304(c)(1) – 2304(c)(7).

56. The Army failed to follow the mandatory procedures to conduct a non-competitive procurement.

57. The Army, by and through each contracting activity, did not synopsize its intent (i.e. give the appropriate notice) of the sole-source awards as required under CICA 41 U.S.C § 253(f)(1)(C).

58. The Army, by and through each contracting activity, did not fully comply with the requirements to provide sufficient facts and rationale to justify the sole-source awards or plan to award. FAR Part 6.303 (requiring sufficient facts and rationale to justify the use of the specific authority cited such as: (1) identification of the agency and the contracting activity; (2) nature or description of the action; (3) a description of the supplies or services required to meet the agency's needs (including the estimated value); (4) an identification of the statutory authority permitting other than full and open competition; (5) a demonstration that the proposed contractor's unique qualifications or the nature of the acquisition requires use of the authority cited; (6) a description of efforts made to ensure that offers are solicited from as many potential sources as is practicable, including whether a notice was or will be publicized as required by FAR Part 5.2; (7) a determination by the contracting officer that the anticipated cost to the

Government will be fair and reasonable; (8) a description of the market research conducted and the results or a statement of the reason market research was not conducted; (9) any other facts supporting the use of other than full and open competition; (10) a list of sources, if any, that expressed, in writing, an interest in the acquisition; (11) a statement of the actions the agency may take to remove or overcome any barriers to competition before any subsequent acquisition for the supplies or services required).

59. In each individual procurement, the particular Army Contracting Officer did not exercise independent judgment, discretion and knowledge, as required by applicable procurement regulations.

60. Each Army Contracting Officer did not individually make a justification, certification and approval as FAR requires. but rather relied upon (an insufficient) justification written by another individual.

61. Each Army Contracting Officer relied exclusively on a directive from a superior in making the sole-source awards challenged in this action.

62. Each Army Contracting Officer did not document whatever independent judgment or decision-making process he used.

## COUNT ONE

### Declaratory Judgment for the Army's Improper Award or Plan to Award Sole-Source Contracts

63. Ezenia incorporates herein the allegations set forth in ¶¶ 1-62 above.

64. The dispute between Ezenia and the Army is an actual, real, and substantial controversy that is justiciable by this Court under 28 U.S.C. § 1491(b) and Rule 57 of the Court of Federal Claims.

65. The Army was required to use full and open competition.