# In the United States Court of Federal Claims

Case No. 07-759C
Filed Under Seal December 11, 2007
Reissued for Publication January 4, 2008
FOR PUBLICATION

| | | |
|---|---|---|
| EZENIA!, INC., *Plaintiff*, v. THE UNITED STATES, *Defendant*, and CARAHSOFT TECHNOLOGY CORPORATION, *Defendant-Intervenor*. | * | Bid protest; Motion to Dismiss; RCFC 12(b)(1); Interested Party; 28 U.S.C. § 1491(b)(1); Sole-Source Procurement; Agency Decision Not Procurement; Task Orders; Federal Acquisition Streamlining Act (FASA) |

*William M. Weisberg*, SULLIVAN & WORCESTER LLP, with whom were *Beth L. Jacobson* and *Joyce L. Tong,* Washington, DC, for Plaintiffs.

*Michael D. Austin*, Trial Attorney, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Donald E. Kinner*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for Defendant. *Peter F. Pontzer*, Trial Attorney, United States Army, Contract Appeals Division, Arlington, VA, of Counsel.

*Richard J. Conway*, Dickstein Shapiro LLP, and *Austin M. Fulk*, of Counsel, Washington, DC, for Defendant-Intervenor.

## OPINION and ORDER

**Smith, Senior Judge:**

In this bid protest action, Plaintiff, Ezenia!, Inc. (Ezenia), as well as the Defendant-Intervenor Carahsoft Technology Corp. (Carahsoft), are vendors on the Army's Federal Supply

Schedule that provide commercial software to the military. The military, and in particular the Army, use different types of software for command and control of soldiers, especially those who are engaged in combat operations. These products allow video-teleconferencing on a computer via the internet in a secure environment, while at the same time allowing the computer screen to show the windows from other computer programs such as PowerPoint presentations or battle plan diagrams. Two such products are Adobe Breeze (now called Adobe Connect) and Ezenia's InfoWorkspace (IWS). Because of the need for interoperability, the Army standardized the software through an evaluation technique called "Best of Breed" and chose Adobe Breeze as its computer software.

Ezenia clearly states in its papers that it is not protesting the actual decision of the Army to standardize, but rather is challenging the award of sole-source contracts for the brand name Adobe Connect product. Ezenia alleges that three contracts were procured in violation of the proper statutory and regulatory guidelines governing those awards. As such, Ezenia asserts that it is an interested party protesting the Army's actions in connection with these procurements.

Defendant and Defendant- Intervenor move this Court to dismiss Plaintiff's action pursuant to Rule 12(b)(1) for want of subject-matter jurisdiction. Both Defendant and Defendant-Intervenor argue that the matter must be dismissed because Plaintiff fails to identify a procurement action within this Court's jurisdiction, and/or that Plaintiff is not an "interested party" with standing to bring this action.[1] Both assert that Ezenia is not an "interested party" because Ezenia is not a qualified bidder. Both further contend that Ezenia is really protesting the standardization decision of the Army to use the Adobe product and that this Court is without jurisdiction to entertain such a protest.

After briefing, oral argument and careful consideration, the Court finds that it must dismiss this matter. It is clear to the Court that even though Ezenia states clearly that it is not challenging the Army's decision to standardize, that is exactly what Ezenia is challenging. The procurements that have been identified by both Plaintiff and Defendant are purchases that were properly done within the statutory and regulatory guidelines. Although not necessary, the Court also finds that Plaintiff is not an interested party. The Court, therefore, **GRANTS** Defendant's and Defendant-Intervenor's Motions to Dismiss.

## FACTS

On October 31, 2007, Ezenia filed this bid protest to enjoin the award of contracts to Defendant-Intervenor. Ezenia did not identify any of the procurements by contract or solicitation number, but alleged three instances where its contracts for the purchase of IWS were not renewed.

[1] Additionally, Defendant-Intervenor argues that the complaint was not filed in a timely fashion. In light of the opinion this issue is moot.

**A. European Command Contract – ICE2 Contract**

On June 1, 2003 the Government, acting through the United States Air Force, awarded the Intelligence, Information, Command & Control (C2), Equipment & Enhancements (ICE2) contract to General Dynamics Network Systems. AR 13. The contract was for a four-year base period with two three-year option periods. AR 14. The Government exercised the first option. AR 140-41. The value of this contract is approximately $2 billion.

The ICE2 contract is designed to provide worldwide sustainment and technical support for the off-the-shelf security systems through individual task orders. AR 14. The contract provides that the "Task Order support may include . . . computer software and documentation services . . . ." *Id*. Additionally, the contract lists agencies that are supported by this multi-service contract, which includes the Army. AR 66. On September 26, 2006 Army Headquarters Europe, (USAREUR) awarded Ezenia a contract for $194,408 for IWS software licenses. Compl. ¶ 27, AR 84. The licenses were for a one-year term and expired in September 2007. Compl ¶ 27.

On June 7, 2007 USAREUR initiated a Contract Materials Purchase Request (CMPR) for $659,495.20 for 525 Adobe Connect software licenses under the ICE2 contract. AR 11, 109. On June 11, 2007, the contracting officer signed the CMPR. Thereafter, on June 27, 2007 General Dynamics issued a purchase order to its subcontractor for the required licenses. AR 112-17.

On Sept 14, 2007 Ezenia filed a bid protest with the GAO alleging the USAREUR improperly awarded a sole source contract for Adobe Breeze or, in the alternative, unreasonably down selected Ezenia's IWS product. AR 151. The Government filed a motion to dismiss. AR 1. Ezenia withdrew this protest at the GAO after it filed its protest in this Court. Pl. Br. at 6.

**B. 82d Airborne and Army Command – FSS Purchases**

On August 13, 2006 the Army's 82nd Airborne Division placed an order for one-year IWS licenses. Pl. Br. at 5. On October 11, 2006 the Army, through the Army Command, Bagram Joint Contracting Office, also placed an order for supplies for one-year IWS licenses. *Id*. None of the licenses were renewed at their expiration. *Id*.

On March 22, 2007 approximately 300 Adobe Breeze software licenses, two server licenses, and server software maintenance were purchased for the 82nd Airborne and Army Command using the Federal Supply Schedule (FSS). AR 209-213. The Army published the requirement to ten vendors and received two quotes. AR 274-77. Thereafter, the Army awarded the contract to the lowest priced offeror. AR 215. Plaintiff filed two more protests at the GAO. Plaintiff subsequently withdrew these protests after this action was filed. Pl. Br. at 6.

## DISCUSSION

**A. Motion to Dismiss - Standard of Review**

RCFC 12(b)(1) mandates dismissal of a complaint when the court lacks jurisdiction over the subject matter. When deciding a motion to dismiss based on a challenge to the jurisdiction of this Court, the Court must reach its decision based on evidence presented to it by parties, and the burden is on the plaintiff to establish jurisdiction. *Rohmann v. United States*, 25 Cl. Ct. 274 (1992). In addition, when deciding a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader. *Patton v. United States*, 64 Fed. Cl. 768 (2005).

**B. Bid Protest Jurisdiction**

This Court has jurisdiction to hear bid protests under 28 U.S.C. § 1491(b)(1). Under this section, this Court has been granted the authority to "render judgment to an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statue or regulation in connection with a procurement ." 28 U.S.C. § 1491(b)(1).

The Government moves to dismiss this action arguing that Ezenia has failed to identify any pending solicitation or procurement within this Court's jurisdiction. Def. Br. at 9. Second, the Government asserts that even if this court finds a solicitation or procurement, the action must be dismissed because Ezenia cannot establish standing to the challenge the award because Ezenia is not an "interested party" as required under 28 U.S.C. § 1491(b)(1). *Id*. at 12-14. Further, the Government argues that Ezenia is essentially protesting the standardization decision by the Government to use Adobe Breeze which is not a procurement and, therefore, outside the purview of this Court. *Id*. at 11. Ezenia responds that it is not protesting the Government's standardization decision, acknowledging that the standardization decision is not a procurement. Rather, Ezenia asserts that it is challenging the award of sole-source contracts for the Adobe Connect product. Pl. Br. at 7. Ezenia alleges that three contracts were procured in violation of the proper statutory and regulatory guidelines governing those awards. As such, Ezenia asserts that it is an interested party protesting the Army's actions in connection with those procurements. *Id.*

The Court will address each of these arguments in turn.

**1. Agency Standardization Decisions are Not Procurement Decisions**

It is clear to the Court that throughout this matter Ezenia is essentially challenging the Army's "Best of Breed" evaluation and standardization that resulted from it. Even though Ezenia focuses most of its attention on the individual contracting actions made pursuant to that decision, fundamentally Ezenia's complaint in this case is about the Army's standardization decision. The Army made a decision through a competitive process to select the Adobe product, a product best suited to fulfill its needs. AR 94-100. In March 2007, a memorandum talked about IWS replacement status because Ezenia's software at the time was not fully interoperable with the Adobe

software. Pl. Br. at 3, Tr. at 27-28. The memo stated that "[t]he decision was made that if an Army organization requires more functionality for collaboration than what ABCS and other products provide then that organization is authorized to purchase Adobe breeds only. Army units may not purchase another application due to interoperability concerns." AR 94. The effort to standardize was to address a battlefield deficiency "with a standard solution set that supports interoperability and modularity." AR 118.

Thus, the Army's decision only standardized the purchase of Adobe products instead of different types of software products offered by different companies in the past. At the time of this procurement Ezenia's software was not fully interoperable with the Adobe software. If Ezenia wishes to contest the decision to procure only Adobe software, it must challenge the overall policy mandating the use of only Adobe products, and that challenge would only be proper in this Court if the Army had chosen to standardize its software with the actual intention of knocking out other parties, for a sole-source procurement. *See Fire-Trol, Inc. v. United States*, 68 Fed. Cl. 281 (2005). Here, however, the standardization decision was not a procurement decision, and thus it would not fall within this Court's bid protest jurisdiction.

**2. There is No Solicitation or Procurement**

In its complaint, the Court finds that Ezenia has not directly cited any pending solicitation or procurement within this Court's jurisdiction. Rather, the Court finds that Ezenia has identified a task order placed under an existing contract and has only alluded to other unidentified procurements, presumably purchases from the FSS. Ezenia does not identify any contract or solicitations by number, but it is clear that purchases were made of the Adobe software. The Court, therefore, turns to the Complaint for guidance. In reviewing the Complaint, the Court notes that there is a possible procurement that Ezenia could challenge. That procurement is for the 2003 General Dynamics IDIQ task order contract. According to Ezenia, when the Government placed the task order it violated CICA and FAR requirements for the awarding of a sole-source contract. Ezenia argues that if the procedure leading to the award is flawed then the form of the award does not immunize that flawed procedure from review. Pl. Br. at 14. In this instance, the Court is not persuaded.

**a. The ICE2 Contract**

41 U.S.C. § 253(a)(1) provides, in relevant part, that the requirements for full and open competition do not apply "in the case of procurement procedures otherwise expressly authorized by statute . . . ." 10 U.S.C. § 2304c specifically states:

> (a) Issuance of Orders--the following actions are not required for issuance of a task or delivery order under a task or delivery order contract:
>
> > (2) Except as provided in subsection (b), a competition (or a waiver of competition approved in accordance with section 2304(f) of the title) that is separate from that used for entering into the contract.

This provision was part of the Federal Acquisition Streamlining Act of 1994 (FASA), now codified in various sections of 10 U.S.C and 41 U.S.C. The purpose of the Act was to streamline, in some instances, federal procurement actions. *See Corel Corp. v. United States*, 165 F.2d 12, 19-20 (D.D.C. Cir. 2001). "In other words, once the task or delivery order contract itself has been obtained through full and open competition, orders made pursuant to that contract are immune from CICA's full and open competition requirement." *Id*. at 16. *See also*, *Data Mmgt. Serv. Joint Venture v. United States*, 78 Fed. Cl. 366, 371 n.4 (2007)("One of the ways in which FASA sought to streamline the government's acquisition of supplies and services was to prohibit protests on the issuance of task or delivery orders, except in limited circumstances.").

Again, Ezenia argues that this sole-source procurement was not done in accordance with CICA or the FAR. Ezenia further argues that the task order was used to side step legitimate competition requirements. Pl. Br. at 12. The Court finds that the Plaintiff's argument still relies on the premise that by choosing to standardize using the Adobe software, the Government has violated CICA. However, the Court has already found that it is without jurisdiction to review the standardization decision, which Plaintiff *claims* it is not challenging. Therefore, the Court must look to the facts regarding the purchase of the software by the task order. It appears to the Court that with regard to the ICE2 contract the contracting officer fulfilled his duties by ensuring that all the requirements were met to issue a task order. AR 11-12; 108. Only after doing such did the contracting officer sign the CMPR. Thus, the Court finds that this task order is exactly the type of purchase that Congress intended to allow the Government to make in order to streamline its acquisitions.

And finally, under 10 U.S.C. § 2394c(d), titled "Protests," it states: [a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." Ezenia has not made any allegations implicating any of the exceptions.

**b. The FSS Purchases**

It is clear from the record that for both the 82nd Airborne and the Army Command contracts purchasing Adobe Breeze, the Army used the FSS schedule to identify the companies that sold the Adobe product. Before awarding the contract, the Army requested 10 quotes, received two quotes, and awarded the contract to the lowest bidder. The Army followed the procedures as required under the statute with regard to FSS purchases. The bid protest mechanism has been put in place to protect the integrity of competition, not for the protection of product choice.

**3. Ezenia is not an "interested party"**

In order to bring a protest in this Court, a protestor must establish standing. *Myers Investigative & Sec. Servs., Inc. v United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). To establish standing in a bid protest, the protestor must show that (1) it is an "interested party;"and (2) it has

been substantially prejudiced by the alleged errors in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). "Interested party" is defined as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004).

Ezenia claims that the Government has violated CICA by its sole source procurement of Adobe Breeze. Therefore, to demonstrate standing in the context of the sole source procurement, "it is sufficient for standing purposes if the Plaintiff shows that it would have competed for the contract has the Government publicly invited bids or requested proposals." *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 570 (2004). However, when claiming a sole source procurement, the protestor "must show that it would have been a qualified bidder." *Myers*, 275 F.3d at 1370-71.

Ezenia challenges the task order purchase and buys off the FSS. Once again, it appears to the Court that although Ezenia asserts repeatedly throughout its brief that it is not contesting the standardization of software that, in essence, is exactly what Ezenia is trying to do. Ezenia is a qualified vendor on the FSS. However, Ezenia does not sell the Adobe Breeze product. Therefore, because Ezenia does not sell the Adobe Breeze software, Ezenia cannot show that it would have been a qualified bidder. Thus, Ezenia lacks standing to bring this action.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's and Defendant-Intervenor's Motions to Dismiss. The Clerk is directed to enter judgment accordingly.[2]

**IT IS SO ORDERED.**

s/Loren A. Smith
Loren A. Smith
Senior Judge

[2] In light of this opinion, Plaintiff's Motion to Supplement the Record is **DENIED**.